Please report. My name is Douglas Johnson, and I represent the appellant and plaintiff on the great hoard in this action. This is a significant case for every outpatient currently awaiting their revocation hearing at the California Rehabilitation Center. If we allow absolute immunity to cover the actions that occurred in this case, every working outpatient that's got a family and is out there trying to do his best and get back into society is going to be put back in prison. And that's one of the problems right now. We're not giving enough due process and a right to go after that person when they don't get due process, which is allowing a lot of prisoners just to go right back in prison. It's a big societal problem. There's big policy reasons why this case needs to really look at the absolute immunity. Let's just go right in to look at her conduct. What does she do? What did she do in this case? Because I think the law is clear now that it's a functional test. There is no longer the cases that this case was ruled on. As you see, the lower court used Anderson and Sellers, which were two cases where the immunity test isn't related to the judicial function that the judge does. Immunity is looked at, do you do something as a judge does? Can this be quasi-judicial? So when we look at her conduct now under the new law, under the functional test, it has to be that judicial function of granting or denying or revoking the parole on the merits of the case. Why? Judges do a lot of other things, don't they? Yes, they do. So if you go into a judge, say you're indicted, or you go in and you ask the magistrate judge for appointment of pro bono counsel, judge says, nope, you think that's not a judicial function? I think that the deciding whether they're not. Is it a judicial function? Yes. Very simple. That's what happens. You go in, you say to the judicial officer, I'd like appointment of counsel. He says, nope, doesn't look to me like you meet our standards. You don't get it. That sounds very judicial to me. Well, in this case, she was told to decide counsel based on the complexity of the case and whether or not he seemed to understand the facts. And I will give you that. Right. That happens, by the way, in a lot of civil cases where people ask for pro bono. That really is the standard. Is it complex? Does he understand the facts? Can this person present his case on his own? And it's usually a judge that decides that and says yes or no. So why is that a judicial function? Well, I think that I will concede that deciding whether or not counsel in this case is the most judicial function out of the three issues that we have here. My problem, really, I think the right to counsel here rolls into is that there was no neutral hearing officer. She was the one who decided, okay, you don't get counsel. I believe the police report. It's not complex. And then she went and sat as a hearing officer. Well, judges do that, too. You go and you go in front of a judge and you ask for counsel. Counsel says, no, thanks. I don't think this is complex enough to require counsel. We don't recuse the judges. The judge goes on hearing the case. All right. But she said, yeah. So what's wrong with that? I think that as a correctional officer, she does a lot more than that. She sits down and counsels that person, tells them what their rights are. She decides who the adverse witness is going to be, who she's not going to get counsel. I mean, I think there's a lot of ---- You ever see that happen in court where the magistrate judge tells the person what his rights are at arraignment or something? These are your rights to counsel. These are your rights. You have a right to this. You have a right to that. Yes. Yes, Your Honor. I think they do. But if you look at the record in this case, the correctional counselor does a lot more. She does all the pre-hearing requirements. And if you see her deposition and you see the facts in this case, she makes up her mind based on the police report. She reads that police report. She decides whether or not he's guilty, and then she switches hats and sits at the hearing. Counsel, in administrative law, it's not unusual to have an inquisitorial model in which the hearing officer takes a very aggressive role in developing the evidence and running the proceedings, a little different from the adversarial role that we often see in court cases. Why is there a problem here with her wearing those two hats? It's not like she's the justice of the peace whose salary is being paid out of the fines that she issues. What's the conflict between the roles that she has as both the probation officer and as a hearing officer? Well, that is our problem, I think, in this case is that she becomes biased, and that's the problem. Why does she become biased? Where's the bias? Well, she sits down and she's telling us in this case, I make my decision based on this police report. I sit down and talk to him and decide whether he's guilty or not. She said it right in there. I always believe the police report. And then she sits and sits on the hearing. I think here's our problem. Here's right our problem is that she's getting too involved in the case. She's looking at the facts. She's getting too inside of it. And then she sits and she says in her deposition, I already make up my mind at the pre-hearing stage. And that's what I'm saying. When you're dealing with these prisoners, you're dealing with these parole situations, and people's liberty are at stake, we've got to draw the line. In normal court hearings, you have an independent panel. What do you want? Do you want a jury trial? No, Your Honor. What are the facts? Do you think they're important? What? I'm sorry. Do you think the facts are important? Yes, Your Honor. And in this case, what conflict was there in the facts? There was a police report with triple hearsay in it, and he would have... No, no, no. What would he say that is untrue about the facts? Did he have the file? Did he put it on the sofa? What did he say he didn't? Oh, he disagreed with all the charges. And in this case, the charges were dropped the next day because if you look at the police report, which is in the file, it has conflicting stories. The one officer says, I watched him go in the door, and the next officer went and knocked. That's why I said he needed a lawyer. Get up there. Get the witness up there. Let's cross-examine him. Let's get to the truth. She had already decided, you know what? I'm not going to send out a subpoena. I'm not going to have the address witnesses here. I've already made up my mind. And that's what my problem is. She's already made up her mind. She didn't want to have the witnesses here, but that's another problem in this case here. We don't have a process to get the witnesses there. Let's say hypothetically this particular judicial officer, if you were or narrowly one, had already made up her mind. After reading the reports, and, of course, there weren't people testifying at the hearing. That's another question. After reading the reports, she thought, this guy is really probably guilty. So that might be a good reason to recuse. Why does that take away the person's status as a judicial officer for the purpose of judicial immunity? You know, if it did, there are a few lawyers out there who would probably want to strip a few district judges of their immunity. Well, I think the issue here is that it wasn't discretionary for her to decide to be the hearing officer. I think two issues here, other than the right to counsel. Are you arguing, counsel, then, that the whole structure of the California system and permitting somebody like her to sit as a hearing officer while they're a probation officer is unconstitutional? It's actually an anomaly in our system in the California Rehabilitation Center. It does not happen in our parole boards. They do have an independent board. Okay. But this was something that was permitted under California law. She's not standing in violation of California law. She is, Your Honor. Is that a decision that she made? No. It was a decision that her superiors and the Department of Corrections had made to use. They were understaffed. They wanted to use their correctional counselors as judges, and so they did. Now I'm a little confused. So this is not a decision that she made that she needed to sit as a hearing officer? That's correct. Okay. But she did sit as a hearing officer. Why does she lose judicial immunity? If you're arguing that the California system put her in this position, then haven't you sued the wrong party? No, Your Honor. She, okay, let me step back. She made the decision to sit on a hearing where she had been a correctional counselor. That's not. And you're arguing, what, that she should have accused herself? She should never sit as a hearing officer after she's been a correctional counselor. So you're arguing that she should have recused herself in that particular case. That's correct. Okay. But that doesn't make her, that doesn't render her responsibilities nonjudicial in nature. Well, I'm. You may have had a due process argument, counsel, for the penalty that was issued here. But what argument do you have that she loses her judicial immunity? My argument is that when she's making that decision, she's just, it's a ministerial act. Oh, I'm going to sit as a hearing officer. She's not really having the power of decision in that one. It's really just an act that she's doing. I don't see it as a, and judges, you know, they want to have, we want it to look unbiased. We want to do things to make it look like people are getting a fair hearing. And so here, she's sitting on somewhere where she's already been biased. And I'm saying, that's not a judicial function. You just don't do that. You don't make a decision, oh, I'm going to sit on this case. Because if there's any impropriety or any, you know, smell of bias, you don't do it. And I'm saying here, she's just, 50% of the time the record shows she's a hearing officer when she's been a correctional counselor. And we know that that's causing problems because she's saying, yeah, I've already made up my mind here. And that's why we want the neutral people. And I'm saying when she makes that decision to jump and sit on her own cases, we need to not cover that with absolute immunity. I don't think that's a judge-like function. I'd like to, well, go ahead. Your time is up, counsel. Thank you. Mr. Schroeder. Mr. Schroeder, so you're clear on what I think he's arguing about. He's not arguing about what she did when she made the decision. He's arguing about her making the decision to do what she did. Do you, is that what you follow from his argument? Your Honor, just to step back and sort of, I'll see what I think. I'll just tell you what I think he's arguing. And if you think we're on the same page here. Otherwise, maybe I'll clarify that. By the way, Conrad Schroeder, Deputy Attorney General, appearing on behalf of Hearing Officer Marina Martinez and the former director, Counselor Hoon. In this case, we feel that the court properly looked at all the tasks  and, basically, there are three tasks that are performed by judges at arraignments and pretrial hearings every day in Superior Court and probably in federal court as well. Those, I think we're in agreement that SWIFT basically reaffirms the whole line of cases, starting with Botts, Sellers, Anderson, and all that whole line of cases that says that it is a functional test. It's not what your, what hat you wear. It's what function you perform. And in this case, he seems to be saying that these three tasks are not functionally comparable to those that are done by judges. Well, I heard him say something different at the end, which was that she shouldn't, that having had access to the police report, that she should not have made the decision to sit as his hearing officer, having been sort of the probation officer on this one. Well, that's part of the problem, is that in looking at SWIFT, they make sort of the distinction between the cop functions and the judge functions. And in the SWIFT case, that those were parole agents who were supervising parolees. And in our case, she never supervised Mr. Ward. She was never involved with him until he came back to the institution and was being processed. And then she went and had what was similar to like a preliminary hearing, or not a preliminary hearing, but more like an arraignment. You know, do you want counsel? What witnesses do you want? That sort of thing. She didn't make any decisions. There's nothing that was in the evidence in the case that stated that she made up that he was guilty based upon something that happened before she even met him. I mean, this is something that's done as a matter of course, that she goes over there and it's sort of in lieu of an arraignment to get all this information and, based on her discretion, exercise these judge-like functions in order to accomplish these tasks. Yeah, I gather he was sweeping with as broad a swat as he could make, but as he discovered, he had some problems with whether what she did was judicial or not. I gather he would assume that from the questions. So he retreated, I think, to a position, well, she should not have decided to act as a hearing officer in this case. She had that option and she didn't exercise it. So let me see. Now that I think I'm getting, I understand your question, so let me try and give you a proper answer to the question. So what he's saying is that once the hearing officer made the decision to deny counsel, that somehow she's biased, that says that she's biased and then she can't sit on his case. Well, every day in court, whenever a judge goes out and denies counsel, that's usually the same judge that handles the case. And if they're mistaken in handling the case, denying a recusal motion after that, then that's something that would be covered under judicial immunity, because whether to sit on the case or not is a judicial function. And it's something that's, there's a list of things that you go through, but it's a decision made on discretion. It's not ministerial. And in this case, the district court judge himself, a former Superior Court judge, examined each of the functions and found them to be functionally comparable to those performed by judges. As far as Terahoon goes, former Director Terahoon goes, one of the things that's important to note about him is that he wasn't even on the job when Hearing Officer Martinez was assigned to be a hearing officer. She received all of her training on all the policies before he was even the Director of Corrections. And they basically, they didn't have, they weren't able to come up with any evidence that he had any notice of any complaints about the constitutional nature of the hearings, you know, whether people were, whether the hearing officers were supposed to recuse themselves, subpoena witnesses versus send them letters, or appoint counsel. Is it correct that all of those procedures come from a different department? And she, for that purpose, reports to a different department? Does she appeal to a different department? Yes, Your Honor. I didn't mean to interrupt you. That is correct. She was assigned to the NEA or CALPU, and they essentially administer the hearings. And she's sort of on loan. She's no longer with the Department of Corrections or Board of Prison Terms when she works for them. She works on their policy, and that was one of the things that the district court judge pointed to is the fact that, you know, this is a separate whole structure that he had no input, no knowledge, no notice. And he was really named as a supervisor when he really wasn't even supervising her at the time. And under 1983, Taylor v. List, under Taylor v. List, there is no supervisory liability without some sort of affirmative act. So really, Terhune was the district court properly found that, you know, he was improperly sued. As far as Martinez goes, the test is simple. I think we all agree on the test that it's functional. It's not the administrative declaration. He keeps talking about her being a correctional counselor, which she was not. A correctional counselor is the title that a correctional officer holds at an institution. She was not his correctional counselor. She was nothing but a hearing officer. That's what she was assigned to do. So to try and force, you know, to carve out a different sort of thing is exactly what Butts and all these cases rejected was this whole what hat are you wearing, what liability do you hold. So unless you have any further questions, I think I've covered everything I wish to cover. Thank you, Mr. Schroeder. Thank you, Your Honor. Mr. Johnson, we'll give you one minute. I'd just like to point out California Code of Regulations, Title 15, Section 3901.27.11, which states that no person participating in making an attorney determination shall be assigned to the hearing panel in the case. So I think the law was clear that she was not allowed to do what she did. And the second point, you brought up correctional counselor. If you look at the codes, that's exactly what she is. She called herself that. Mr. Tohune knew it. And on the Mr. Tohune note, he admitted it was his duty to supervise, his duty to train. That was his employee. That was a CDC employee. He didn't even know that his employees were being the hearing officers. You cannot have a policy of indifference and then just say, I didn't know. Look at the law. An omission is just as good as an act under 1983. Thank you. Okay. Thank you. All right. Ward v. Gordon then will be submitted.
judges: Farris, Fernandez, Bybee